JOHN W. SCOTT *v.* W. P. ELLIOTT and others.

A judgment in an action of Replevin, brought under Rev. Code, ch. 98, for the penalty of the bond given by the defendant according to the provisions of § 4, without a previous judgment against the defendant, as at common law, is erroneous.

In such case the judgment should be, that the plaintiff recover *the thing,* and in case it cannot be had, then *the value* assessed; and *also damages* for the caption and detention, with his costs; and, superadded thereto, a judgment against the defendant and his sureties, for the penalty of the bond, to be discharged by performing the former judgment.

The *value* should be assessed as at the time of the trial, and not at that of the caption.

It is erroneous to assume that six *per cent.* is the proper measure of damages in such case; it might be more, or less.

*Semble,* that the judgment in such cases should not include a sheriff who has been fixed as special bail of the defendant, but that he is to be reached by *sci. fa.,* and entitled to surrender his principal in discharge of his liability.

The provision in the Act, that Replevin may be maintained against persons in possession, *wherever Trover or Detinue will lie,* is not universal, but *sol modo* only, reference being had to the different natures of the actions spoken of.

(The Replevin Act, Rev Code, ch. 98, construed by PEARSON, C. J.)

REPLEVIN, tried before *Mitchell, J.,* at Fall Term, 1867, of the Superior Court of CHATHAM.

The action had been brought under the provisions of the Revised Code, ch. 98, for a steamboat which remained in the hands of the defendant, he having given the required bond. Upon the trial it appeared that the sheriff had levied an attachment upon the boat under the Act giving a lien for work

done and materials furnished to vessels; that it subsequently had been condemned as being "perishable" by three freeholders, and sold; and that upon the sale it was purchased by the plaintiff. Afterwards it had been seized by the defendant, and upon demand he refused to surrender it.

The Court instructed the jury that the plaintiff was entitled to recover, and that they must find by their verdict the value of the boat, and also damages for the caption and detention, which in this case would be six *per cent.* on the value of the boat from the time of its caption to the first day of the term.

There was a verdict for the plaintiff, that the value of the boat was $3,000, and they assessed the damages at $1,920.00. Judgment was entered as follows: " Thereupon it is considered by the Court that the plaintiff recover against the defendant Elliott, and George Harris his surety to the bond returned with the writ, and E. D. Hall as special bail, the sum of six thousand dollars penalty of said bond, and all costs of suit, which may be discharged by the surrender of said steamer, and payment of damages and costs."

As part of the record was also sent up a transcript of an action by *scire facias* between the plaintiff Scott, and E. D. Hall, as sheriff of New Hanover, in which Hall was called upon to show cause why he should not be adjudged special bail of the defendant Elliott. In this case judgment was given, by default at Fall Term 1867, against the defendant.

From the judgment in the principal case the defendants appealed.

*Phillips* and *Battle*, for the appellants.

*Howze* and *Manning, contra.*

PEARSON, C. J. From the very loose and imperfect manner in which the case is made up, this Court is left to grope its way in the dark.

In a paper signed by the attorneys it is set out: " The defendants insisted that the measure of damages should have been the amount of the claim upon which the attachment was

issued." The proceedings in that case cannot make a part of this, and we are not even at liberty to take *judicial* notice ·of the fact that *Bryan* v. *Steamer* "*Enterprise*" 8 Jon. 260, .has any connection with our case; so we are not informed as to "the amount of the claim upon which the attachment has issued," nor do we know whether the sale made by the sheriff of the Steamboat "Enterprise" as perishable property, was held valid or not. Any one who will read the papers in this ·case must be satisfied, that an amendment of the law as to the manner of sending up cases for the determination in the Supreme Court has become necessary.

We infer from what is set out in the papers sent up to us, that under the instructions of his Honor, the jury assessed the value of the steamboat at the time she was taken by the ·defendant in 1857, and also assessed damages for the detention, at the rate of six *per cent.* per annum upon that valuation, from the time of the taking up to the time of the trial, at Fall Term 1867, and we see from the transcript that his Honor did not render judgment against the defendant, "that the plaintiff .recover the steamboat, and the damages assessed for the ·caption and detention, together with costs, and if the boat cannot be had, the value of the boat as assessed by the jury." But the judgment is, "thereupon it is considered by the Court that the plaintiff do recover against the defendant Elliott and George Harris his surety to the bond returned with this writ, and E. D. Hall, sheriff and spe-·cial bail, the sum of $6.000, penalty of said bond, and all costs ·of suit, which may be discharged by surrender of said steamer, .and payment of damages and costs."

We think there is error in having the value assessed at the ·date of the caption, instead of at the time of the trial; and also in assessing six *per cent.* per annum upon such value, from the caption up to the time of trial, as the rule of damages for caption and detention. There is also error in the judgment.

As to the value. The statute, Rev. Code ch. 98. "Reple-vin." requires the plaintiff to swear to the value at the time of caption or detention. This is for the purpose of fixing the amount of the bond, which the Clerk is to take of the plaintiff

in double the sworn value, conditioned to perform the final judgment; the penalty being double the sworn value to compel a return of the property, if it can be had, otherwise to secure payment of its value, together with damages for its detention, during the pending of the action, and the costs. Sec. 2nd directs the Sheriff to allow the property to remain with the defendant, provided he gives bond in double the sworn value conditioned to perform the final judgment; the penalty being in double the amount to compel the return of the property if it can be had, otherwise payment of its value, together with damages for caption, detention and costs.

So far the meaning is clear, but the 3rd and 4th sections are obscurely worded, and it is necessary to resort to construction in order to make the several provisions harmonize, and give effect to all. Sec. 3, " If the property shall have been delivered to the plaintiff and he shall fail to recover, the Court shall forthwith direct an enquiry of the value of the property and the damages sustained by the defendant by the detention of his property," and judgment shall be rendered against the plaintiff and his sureties for the penalty of his bond; which may be discharged on surrender of the property and payment of the damages and costs." The difficulty is, if the judgment can only be discharged by the *surrender of the property*, and not by the payment of its assessed value if the property can not be had—why direct an inquiry of the value of the property? Can a construction be justified which gives no effect whatever to this clause, and assumes that an useless labor is imposed upon the Court and jury? Certainly not; when from a consideration of the gravamen of the common law action, for which this is intended as a substitute or more properly speaking an extension, it is seen that the purpose of this assessment of the value of the property, is to provide for a case when the property cannot be had. If this be the true construction, it is manifest that the value should be assessed as at the time when such value is to be taken in lieu of the property, should it turn out that it has been eloigned or destroyed.

Section 4, under which our case falls, " If the property shall have remained with the defendant, and the plaintiff on the

trial shall recover, the jury shall assess the value of the property, as likewise the damages for its caption and detention, and the plaintiff shall recover against the defendant and his securities, the penalty of his bond and costs of suit, which may be discharged by surrender of the property and payment of the damages and costs." To one accustomed to judicial forms and entries, this language is actually painful by reason of the inartificial use of technical words, and the confusion of ideas which it occasions. It is taken from the wording of the Act of 1828. "*The jury shall assess the value of the property*" for what purpose, if the plaintiff is to recover against the defendant and his sureties the penalty of the bond and costs of suit: that is if judgment is to be rendered for the amount of the penalty of the bond to be discharged only by the *surren- of the boat* and the payment of the damages and costs? It would seem that the utmost that could be exacted in case the boat could not be surrendered in order to discharge the penalty, was the payment of the value, damages and costs. To show that no effect can be given to the provision requiring the value of the property to be assessed, unless such value is to be a discharge of the judgment, in lieu of the property in case it cannot be had, together with the damages and costs; and that, if so, the value must be assessed at the time of the trial, we refer to what is said in reference to the construction of sec. 3. But besides all this, sec. 4 assumes that the plaintiff is to *recover*, that is, to have judgment against the defendant. What should the judgment be? "That the plaintiff recover the thing, and in case it cannot be had, the value assessed and also damages for the caption and detention, and his costs," and superadded to this (following the obligation of the bond), the Court is to give judgment that the plaintiff recover of the defendant and his sureties the amount of the penalty of the bond, to be discharged by performing the former judgment. We have seen what that judgment should have been, and there is nothing to justify the construction, that after prescribing the form of the condition, it was the intention to depart from it, and restrict a discharge of the judgment given

for the penalty, to a surrender of the property, to the exclusion of its discharge in respect to the property, in case it could not be had, by payment of the value assessed. Suppose the property to have been destroyed, pending the action, by the act of God, without default on the part of the defendant. It would be monstrous to infer an intention on the part of the law-makers to require the defendant and his sureties to pay the whole penalty, unless he surrendered the property, a thing which was impossible. It is a familiar principle of law that when the condition of a bond becomes impossible by the act of God, the condition is saved.

But it is objected—on what ground assume that the judgment against the defendant should be, that the plaintiff recover the thing and damages for detention and costs, and *in case it cannot be had*, then the value assessed, as in the *action of detinuo*? Why may not the judgment against the defendant be that the plaintiff recover the amount of damages assessed by the jury for the wrongful act of the defendant, including the value at the time of conversion and interest and costs, as in the *action of trover*? There are two answers: The statute does not direct that the jury shall assess damages for the wrongful act of the defendant, as in *trover*, but requires the jury to assess the value of the property, and damages for its detention, as in *detinue*. In the second place, although the word "*trover*" is used in the statute the action of replevin given by it is restricted to cases where *detinue* would lie, for it only applies to cases, *where the defendant is in possession*, at the time the writ issues. So "*trover*" must be used as covering only the same ground as *detinue*, or else the word is out of place and misapplied. One kills my hog—I can maintain *trover*, but I cannot maintain *detinue* or *replevin*, either at common law or under the statute, for in *detinue* or *replevin*, the plaintiff demands restitution of his property, and such demand is idle when the property is not *in esse* and is not in the possession of the defendant; so it is clear the word "*trover*" is inartificially used, unless it be confined to cases where *detinue* would lie, and it must be treated as an expletive.

We have so far treated this statute as standing by itself; but when taken in connection with the common law actions of replevin and detinue on the one side, and trespass *de bonis asportatis* and trover on the other, the construction is obvious. In replevin and detinue the plaintiff asserts the property to *continue to* be *his*, and *the* object of the action is to recover the specific thing. In replevin at common law, the thing is returned to the possession of the plaintiff pending the action, so if it dies or is destroyed the loss falls on him, and he can only recover damages, for the caption and detention "*quousque* the replevin." In detinue the thing remains in possession of the defendant pending the action, but the plaintiff asserts the property to *continue to be his*, and the gravamen of the action is to recover the specific thing, so that if it dies or is destroyed, the loss falls on him, and it is settled that the action cannot be further prosecuted, except to recover damages for the detention. So we see what judgment the plaintiff is entitled to in detinue. And the object of the statute is to extend the action of replevin to all cases where detinue lies,—with this modification, that the defendant is to retain possession pending the action, provided he executes a bond conditioned "to perform the final judgment.

In trespass *de bonis asportatis*, and in trover, the gravamen of the action is, that the plaintiff has been wrongfully *deprived of his property*, and the plaintiff sues to recover damages for the injury, but he asserts no *further claim to the property*, and if it be lost or destroyed it is no concern of his. So when the statute under consideration requires the Court forthwith to direct the jury to assess the value of the property, it can have no reference to these two actions, and must refer to the action of replevin at common law, and to the action of detinue—where the thing is demanded, or, if it cannot be had, its value, as well as damages for its detention.

As to the measure of damages, we can see no ground for making six *per cent.* interest on the sworn value, the rule, and his Honor erred in adopting it. The earnings of the boat might be more or less. As it does not appear whether the boat

is in a condition to be surrendered, or has been destroyed, and this may materially affect the question, we give no opinion in regard to it, further than to say, that the plaintiff is entitled to damages as well for the taking as for the detention, and has a right to full indemnity for the injury done to him.

This construction carries out the meaning of the statute—gives effect to all of its provisions, avoids an incongruity like that of giving judgment against the securities for an appeal without giving judgment against the principal, and also avoids the objection, that the Court had no power to give a judgment on the forth-coming bond, at variance with the conditions therein expressed.

3rd. It is not necessary to comment on the judgment, or to decide whether it could be made to include Hall, the sheriff, who, although fixed as special bail, could, it would seem, be only reached by *sci fa*, and was entitled to surrender his principal in discharge of his liability. There is error. This will be certified.

PER CURIAM.                                *Venire de novo.*